AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | Case No.  '21 MJ01810 |
| *or identify the person by name and address)* | ) | |
| Two cellular telephones, Three Sim Cards, and One SD | ) | |
| Card, seized on January 27, 2021 | ) | |
| | ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 46USC secs. 70503, 70506(b) | Conspiracy to Distribute Cocaine on Board a Vessel; Possession of Cocaine with Intent to Distribute on Board a Vessel |
| 18 USC sec. 2285 | Conspiracy to Operate a Semi-Submersible; Operation of a Semi-submersible |

The application is based on these facts:

See Attached Affidavit of Special Agent Jaime Simko, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Jaime Simko*
_____
*Applicant's  signature*

Special Agent Jaime Simko, CGIS Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date: _____ 05/06/2021 _____

*William V. Gallo*
_____
*Judge's signature*

City and state:  San Diego, California

Hon. William V. Gallo, U.S. Magistrate Judge
_____
*Printed name and title*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTACHMENT A

The property to be searched in connection with an investigation of violations of violations of Title 46 U.S.C. §§ 70503(a)(1), 70506(b), and Title 18 U.S.C. § 2285 is described below:

One (1) Galaxy SM-J610G cell phone, black in color, S/N - R28M10P0FMW, IMEI – 353779104255247 ("**Target Device 1**") as described in Attachment A and incorporated herein,

One (1) Claro 4G LTE Sim card, red in color, bearing number 57101502302272459 ("**Target Device 2**") as described in Attachment A and incorporated herein,

One (1) Samsung Galaxy SM-A107M cell phone, blue and black in color, S/N R9ANA06THZJ, IMEI - 353416117262957 and 353417117262955 ("**Target Device 3**") as described in Attachment A and incorporated herein,

One (1) Claro 4G LTE Sim card, red in color, bearing number 57101502408279972 OB 15.12 ("**Target Device 4**") as described in Attachment A and incorporated herein,

One (1) Movistar Sim Card, green and white in color, bearing number 4G 1.P3 12-33-02010173784 ("**Target Device 5**") as described in Attachment A and incorporated herein,

One (1) Kingston 8 GB Micro SD card HC, black in color, bearing number SDC10/8GB 31526-D03.A00NJ ("**Target Device 6**") as described in Attachment A and incorporated herein,

(collectively referred to as "**Target Devices**")

Target Devices are currently in the possession of United States Drug Enforcement Administration, San Diego Field Division.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the **Target Devices** described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Devices**. The seizure and search of the **Target Devices** will be conducted in accordance with the procedures outlined in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Devices** will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period November 1, 2020, up to and including February 28, 2021:

a.  tending to identify attempts to transport cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services- such as email addresses, IP addresses, and phone numbers-used to facilitate the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

d.  tending to identify travel to or presence at locations involved in the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States, such as pickup, transfer, and delivery locations, along with the refueling points throughout the smuggling venture;

e.  tending to identify the user of, or persons with control over or access to, the target device; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of Title 46 U.S.C. §§ 70503(a)(l), 70506(b), and Title 18 U.S.C. § 2285.**

13

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Special Agent Jaime Simko, being duly sworn, depose and state as follows:

## INTRODUCTION

1.     This affidavit supports an application to search the following target devices:

One (1) Galaxy SM-J610G cell phone, black in color, S/N - R28M10P0FMW, IMEI – 353779104255247 ("**Target Device 1**") as described in Attachment A and incorporated herein,

One (1) Claro 4G LTE Sim card, red in color, bearing number 57101502302272459 ("**Target Device 2**") as described in Attachment A and incorporated herein,

One (1) Samsung Galaxy SM-A107M cell phone, blue and black in color, S/N R9ANA06THZJ, IMEI - 353416117262957 and 353417117262955 ("**Target Device 3**") as described in Attachment A and incorporated herein,

One (1) Claro 4G LTE Sim card, red in color, bearing number 57101502408279972 OB 15.12 ("**Target Device 4**") as described in Attachment A and incorporated herein,

One (1) Movistar Sim Card, green and white in color, bearing number 4G 1.P3 12-33-02010173784 ("**Target Device 5**") as described in Attachment A and incorporated herein,

One (1) Kingston 8 GB Micro SD card HC, black in color, bearing number SDC10/8GB 31526-D03.A00NJ ("**Target Device 6**") as described in Attachment A and incorporated herein,

(collectively referred to as "**Target Devices**") and to seize evidence of crimes as outlined in Attachment B, and incorporated herein, specifically Title 46 U.S.C. §§ 70503(a)(1), 70506(b)[1], Conspiracy to Distribute Cocaine on Board a Vessel, Possession with Intent

---

[1]  Title 46 U.S.C. §§ 70503(a)(1) and 70506(b) prohibits the manufacture, distribution, and possession of controlled substances, and conspiracy to commit the same, on vessels subject to jurisdiction of the United States. A vessel is "subject to the jurisdiction of the United States" if the vessel is without nationality. A vessel without nationality includes any vessel aboard which the master or individual in charge makes a claim of registry and

1

to Distribute Cocaine On Board a Vessel and Title 18 U.S.C. § 2285[2] Conspiracy to Operate a Semi-Submersible, Operation of a Semi-submersible.

2.    Defendants Lucio APPLETON Lewis (APPLETON), Cristobal SANCLEMENTE Farrufia (SANCLEMENTE) and Yonson RENTERIA Cuero (RENTERIA), were detained on January 27, 2021. A maritime patrol aircraft (MPA) was on patrol when it detected a low profile vessel (LPV) approximately 55 nautical miles South of Panama, in the Eastern Pacific Ocean. The LPV had three outboard engines and was grey in color. Images show it appears to meet the definition in 46 U.S.C. § 70502 as a "semi-submersible" vessel "capable of operating with most of its hull and bulk under the surface of the water."[3] Its design and distance from land also indicates an intent to evade detection.



for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.

2 Title 18 U.S.C. § 2285 prohibits operating, attempting or conspiring to operate, by any means, or embarking in any submersible or semi-submersible vessel that is without nationality and navigating, has navigated into, through, or from waters beyond the outer limit of the territorial sea of a single country, with the intent to evade detection. The term "Semi-submersible vessel" has the meaning given in Title 46 U.S.C. § 70502. Title 46 U.S.C. § 70502(f) states the "term 'semi-submersible vessel' means any watercraft constructed or adapted to be capable of operating with most of its hull and bulk under the surface of the water, including both manned and unmanned watercraft."

3 *Id*.

2

3.     The Coast Guard Cutter MUNRO (MUNRO) diverted to intercept and dispatched a Coast Guard (CG) small boat with an embarked law enforcement team to intercept the LPV. When a CG small boat arrived on scene with the LPV, it was drifting. Inside the LPV the CG discovered the three defendants as well as approximately 1,560 kilograms (3, 432 pounds) of cocaine. The **Target Devices** were seized from the GFV's and/or defendants.   The **Target Devices** are in the custody of the Drug Enforcement Administration in San Diego, California.

4.     Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachment B.

## **TRAINING AND EXPERIENCE**

5.     I am a Special Agent with the Coast Guard Investigative Service (CGIS) and have been so employed since 2016. I have been a Federal Law Enforcement Officer for approximately 15 years and in addition served close to 7 years on active duty with the USCG conducting counter-drug operations. I have conducted criminal investigations of or relating to narcotics smuggling and other crimes. I have received specific training in the area of narcotics investigations, and I have training and experience in the methods used by narcotics traffickers to import and distribute drugs. I am presently assigned to the Organized Drug Enforcement Task Force (OCDETF) Strikeforce Group in San Diego, California, and my duties include investigating the illicit trafficking of controlled substances into the United States of America. I am designated to conduct narcotics investigations and enforce the provisions of the Maritime Drug Law Enforcement Act, pursuant to Title 46, United States Code.

6.     I have received formal training, as well as extensive on-the-job experience and training, relative to the investigation of the importation, transportation, sales, manufacturing, and distribution of controlled substances. I have also participated in investigations that involved the use of electronic surveillance techniques. I have

investigated illicit narcotic and controlled substances that have resulted in arrests, indictments, trials, and convictions. While participating in these and other criminal investigations, I have executed search warrants on businesses, residences, and vehicles. I have also participated in undercover operations that involved the sale, purchase, transportation and importation of controlled substances. I have participated in investigations in which drug traffickers also relied heavily upon electronic communication facilities and other electronic devices as a means of communicating. I have interviewed individuals who have been directly and indirectly involved in the importation, transportation, distribution and manufacturing of illegal drugs and controlled substances.

7.      Based on my training and experience, I have become familiar with the methods utilized in narcotics trafficking operations and the unique trafficking patterns employed by narcotics organizations.  I have also spoken with senior agents as well as other senior law enforcement officers, about their experiences and the results of their investigations and interviews. I know that drug-traffickers often require the use of a communication facility to negotiate times, places, schemes and manners for importing, possessing, concealing, manufacturing and distributing controlled substances, and for arranging the disposition of proceeds from the sales of controlled substances.  I know that professional drug operations depend upon maintaining their extensive contacts. The communication facility enables drug dealers to maintain contact with drug associates, drug suppliers and drug customers.  I also know that drug-traffickers sometimes use fraudulent information, such as nominee names and false addresses, to subscribe to communication facilities, especially emails, cellular phones, messaging apps, and frequently use communication facilities to thwart law enforcement efforts to intercept their communications.

8.      Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling

4

investigations, I am also aware that:

    a.    Drug traffickers will use cellular/satellite telephones/ SIM cards/ SD Cards because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

    b.    Drug traffickers will use cellular/satellite telephones/ SIM cards/ SD Cards and GPS devices because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

    c.    Drug traffickers and their accomplices will use cellular/satellite telephones/ SIM cards/ SD Cards and GPS devices because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

    d.    Drug traffickers will use cellular/satellite telephones/ SIM cards/ SD Cards and GPS devices to direct boat captains/crew members to synchronize an exact drop off and/or pick up time of their illegal cargo;

    e.    Drug traffickers will use cellular/satellite telephones/ SIM cards/ SD Cards and GPS devices to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings;

    f.    The use of cellular/satellite telephones/ SIM cards/ SD Cards by drug traffickers tends to generate evidence that is stored on by the service provider, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, routes, location history, and other digital information.

    g.    The use of GPS devices by smugglers tends to generate evidence that is stored on the GPS, including, but not limited to address book entries, search history, user profiles and passwords, location history, route contacts, saved addresses-tending to indicate who used or controlled the GPS device, and other digital information.

    9.    Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in drug-trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/satellite telephones/SIM cards/ SD Cards can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails,

text messages, chats and chat logs from various third party applications, photographs , audio files, videos, and location data. I also know that GPS devices can and often do contain electronic records and data such as contacts location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone/satellite telephone/SIM card/ SD Cards. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular telephones/satellite telephones/SIM cards/ SD Cards and GPS devices yields evidence:

a.       tending to identify attempts to transport cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

b.       tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

c.       tending to identify co-conspirators, criminal associates, or others involved in the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

d.       tending to identify travel to or presence at locations involved in the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States, such as pickup, transfer, and delivery locations, along with the refueling points throughout the smuggling venture;

e.       tending to identify the user of, or persons with control over or access to, the target device; and/or

f.       tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

6

10. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of drug-trafficking investigations, and the opinions stated here are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit. This statement is made in support of an application for a warrant to search **Target Devices** that are believed to contain evidence of violations of Title 46 U.S.C. §§ 70503(a)(1), 70506(b) and Tile 18 U.S.C. § 2285.

11. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to federal agents regarding this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, upon conversations with other Special Agents in Federal Law Enforcement, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

## **FACTS SUPPORTING PROBABLE CAUSE**

12. On January 27, 2021, a maritime patrol aircraft was on patrol when it detected a low profile vessel (LPV) approximately 55 nautical miles South of Panama, in the Eastern Pacific Ocean. The LPV had three outboard engines and was grey in color. Images show it appears to meet the definition in 46 U.S.C. § 70502 as a "semi-submersible" vessel "capable of operating with most of its hull and bulk under the surface of the water." Its design and distance from land also indicates an intent to evade detection.

13. The Coast Guard Cutter MUNRO (MUNRO) diverted to intercept and dispatched a Coast Guard (CG) small boat with an embarked law enforcement team to intercept the LPV. When a CG small boat arrived on scene with the LPV, it was drifting.

14.     During a Right of Visit Boarding of the LPV the CG discovered it was manned by the three defendants. USCG personnel observed no physical flag, no vessel name, no homeport on the hull, no name on the hull, and no registry number on the GFV. Defendant APPLETON claimed to be the master of the vessel and made a claim of Colombian nationality for the LPV. The Coast Guard enacted the United States/ Colombia Bilateral Agreement and conducted a forms exchange with Colombia. Colombia could neither confirm nor deny the nationality of the vessel. Therefore, the CG issued a Statement of No objection and treated the vessel as without nationality ("TWON") and conducted a full law enforcement boarding.

15.     A CG boarding team then conducted a boarding of the LPV and inside recovered approximately 1,560 kilograms (3,432 pounds) of cocaine. Field testing confirmed the packages tested positive for cocaine. They also discovered the **Target Devices** inside the LPV**.**

16.     Therefore, based upon my experience investigating drug-traffickers using low profile vessels and the particular investigation in this case, I believe that pertinent information, specifically launch-point locations, refueling way-points and the overall smuggling route, remain stored on the **Target Devices,** and that APPLETON, SANCLEMENTE, and RENTERIA likely used the **Target Devices** to coordinate the conspiracy to distribute cocaine on board a vessel subject to the jurisdiction of the United States, possession with intent to distribute cocaine onboard a vessel, conspiracy to operate a semi-submersible vessel, and operation of a semi-submersible vessel. Based on my investigation of drug importation and distribution conspiracies, coordination between smugglers can begin several weeks or months before drugs are loaded into the low profile vessel, and includes coordination on the pickup, transfer, and delivery locations, along with the refueling points throughout the smuggling venture. I respectfully request permission to search **Target Devices** for data beginning on November 1, 2020, up to and including January 28, 2021.

17.     I also know that search history, user profiles and passwords, location history, routes, contacts, saved addresses–tending to indicate who used or controlled the cellular telephone or GPS device, and other digital information are stored in the memory of **Target Devices** which may identify other persons involved in drug-trafficking activities. Additional contact information for others possibly involved in the conspiracy to distribute controlled substances can be adduced from **Target Devices**.

18.     Based upon my experience and training, consultation with other law enforcement officers experienced in drug-trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of APPLETON, SANCLEMENTE, and RENTERIA, such as search history, user profiles and passwords, location history, routes, contacts, saved addresses– tending to indicate who used or controlled the cellular telephone and SIM card or SD Card, and other digital information are stored in the memory of **Target Devices**.

## METHODOLOGY

19.     It is not possible to determine, merely by knowing the cellular telephone, satellite phone, SIM card, SD Card, or GPS device's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices and satellite telephones today can be simple cellular telephones/satellite telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing.  An increasing number of cellular service/satellite service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device.  For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones/satellite telephones do not have hard drives or hard drive equivalents and store

9

information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect the cellular telephone/satellite telephone/SIM Card/ SD Card and GPS device and subject it to analysis. All forensic analysis of the data contained within the cellular telephone/satellite telephone/SIM Card/ SD Card and GPS device and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

22. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that APPLETON, SANCLEMENTE, and RENTERIA used **Target Devices** to facilitate the offense of conspiracy to distribute cocaine. The **Target Devices** were likely used to facilitate the offense by transmitting and storing data, which constitutes evidence of violations of Title 46 U.S.C. §§ 70503(a)(1), 70506(b) and

Title 18 U.S.C. §2285.

23.    Because the **Target Devices** were seized, there is probable cause to believe that evidence of illegal activity related to conspiracy to distribute cocaine on board a vessel subject to the jurisdiction of the United States, possession with intent to distribute cocaine onboard a vessel, conspiracy to operate a semi-submersible vessel, and operation of a semi-submersible vessel committed by APPLETON, SANCLEMENTE, and RENTERIA continues to exist on the **Target Devices**.

24.    WHEREFORE, I request that the court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and to seize items listed in Attachments B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Jaime Simko
Special Agent
Coast Guard Investigative Service

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this <u>6th</u> day of May 2021.

_____
HON. William V. Gallo
United States Magistrate Judge

11

## ATTACHMENT A

The property to be searched in connection with an investigation of violations of violations of Title 46 U.S.C. §§ 70503(a)(1), 70506(b), and Title 18 U.S.C. § 2285 is described below:

One (1) Galaxy SM-J610G cell phone, black in color, S/N - R28M10P0FMW, IMEI – 353779104255247 ("**Target Device 1**") as described in Attachment A and incorporated herein,

One (1) Claro 4G LTE Sim card, red in color, bearing number 57101502302272459 ("**Target Device 2**") as described in Attachment A and incorporated herein,

One (1) Samsung Galaxy SM-A107M cell phone, blue and black in color, S/N R9ANA06THZJ, IMEI - 353416117262957 and 353417117262955 ("**Target Device 3**") as described in Attachment A and incorporated herein,

One (1) Claro 4G LTE Sim card, red in color, bearing number 57101502408279972 OB 15.12 ("**Target Device 4**") as described in Attachment A and incorporated herein,

One (1) Movistar Sim Card, green and white in color, bearing number 4G 1.P3 12-33-02010173784 ("**Target Device 5**") as described in Attachment A and incorporated herein,

One (1) Kingston 8 GB Micro SD card HC, black in color, bearing number SDC10/8GB 31526-D03.A00NJ ("**Target Device 6**") as described in Attachment A and incorporated herein,

(collectively referred to as "**Target Devices**")

Target Devices are currently in the possession of United States Drug Enforcement Administration, San Diego Field Division.

# **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the **Target Devices** described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Devices**. The seizure and search of the **Target Devices** will be conducted in accordance with the procedures outlined in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Devices** will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period November 1, 2020, up to and including February 28, 2021:

a. tending to identify attempts to transport cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services- such as email addresses, IP addresses, and phone numbers-used to facilitate the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

d. tending to identify travel to or presence at locations involved in the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States, such as pickup, transfer, and delivery locations, along with the refueling points throughout the smuggling venture;

e. tending to identify the user of, or persons with control over or access to, the target device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of Title 46 U.S.C. §§ 70503(a)(l), 70506(b), and Title 18 U.S.C. § 2285.**

13